PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| AIM LEASING COMPANY, *et al.*, | ) |
| Plaintiffs, | ) CASE NO. 4:14CV2161 |
| v. | ) JUDGE BENITA Y. PEARSON |
| RLI CORP., *et al.*, | ) |
| Defendants. | ) **MEMORANDUM OF OPINION AND ORDER** [Resolving ECF No. 14] |

Pending before the Court is a motion to dismiss filed by Defendant RLI Insurance Company ("RLI"). ECF No. 14. For the reasons provided below, the Court grants Defendant RLI's Motion to Dismiss.

**I. Factual and Procedural History**

The genesis of this lawsuit is the alleged failure of Plaintiffs' workers' compensation insurance, provided by non-party Ullico Company ("Ullico"), to fully cover Plaintiffs' workers' compensation costs and exposure. Aim Leasing Company, AIM Leasing Drivers Company, and AIM Integrated Logistics, Inc., (collectively, "Plaintiffs") allege the following facts. *See* ECF No. 1. Between 2009 and 2013, Defendant Safe Fleet Insurance Services, Inc. ("Safe Fleet"), one of Plaintiffs' insurance brokers, brokered and/or placed various types of insurance for Plaintiffs through RLI and Ullico. RLI provided Plaintiffs with general liability, business automobile, cargo, and other loss coverage. Defendant David Williams ("Williams"), Vice

President and General Manager of Safe Fleet, was primarily responsible for designing, managing, brokering, and placing insurance for Plaintiffs. Plaintiffs also allege that David Williams ("Williams") is an executive with RLI. [ECF No. 1 at Page ID#: 5, ¶ 13](). Plaintiffs relied upon Safe Fleet and Williams to design, place, and broker their general liability, business automobile, cargo, and workers' compensation insurance. Defendant Main Street America MGA Inc. ("Main Street"), an insurance producer and agency, provided workers' compensation insurance quotes to Plaintiffs at the direction of Safe Fleet, Williams, and Defendant Rick Walker ("Walker"), President of Defendant Harbor America Specialty Brokerage, LLC ("Harbor"). Harbor, another insurance broker for Plaintiffs, is responsible for receiving Plaintiffs' wired deposits and premium payments and also serving as a managing general agent and/or underwriter for Ullico's workers' compensation insurance program.

Safe Fleet, Main Street, Williams, Walker, and Harbor presented to Plaintiffs insurance quotes, including a guaranteed cost program, from Ullico and RLI as a package deal that would allow Plaintiffs to save on premiums of insurance coverage if Plaintiffs secured from RLI and Ullico simultaneously. Plaintiffs purchased insurance coverage from RLI and Ullico. Williams served as Plaintiffs' contact person for RLI and Ullico. Ullico issued four annual Workers' Compensation & Employer's Liability Policies to Plaintiffs for the policy periods August 1, 2009 through February 1, 2013.[1] On February 1, 2012, Plaintiffs made a deposit payment to Ullico for the policy period February 1, 2012 to February 1, 2013, in an amount in excess of $193,275. At

---

[1] The Complaint contains no further information regarding the general liability, business automobile, and cargo insurance provided by RLI.

(4:14CV2161)

the conclusion of the policy period, Ullico was required to adjust and/or refund to Plaintiffs any overpayment of premium payments based upon actual payroll or remuneration amounts made during the period. During the contract renewal, Safe Fleet, Williams, and Walker advised Plaintiffs that Ullico's financial strength rated at B+ (good), but on February 7, 2012, Ullico's financial strength was downgraded to a B (fair). During a telephone conference call on March 7, 2012, Williams, as a representative of Safe Fleet, Walker, as a representative of Main Street, and Harbor advised and recommended that Plaintiffs nonetheless stay with Ullico, advice that Plaintiffs adopted. Defendants Williams and Walker advised Plaintiffs that if Ullico was unable to satisfy Plaintiffs' workers' compensation claims, each state in which Plaintiffs conducted business offered a "guarantee fund" with no limits on claim coverage, serving as a back-up or additional last-resort insurer of workers' compensation claims.

In early 2013, Ullico was placed into receivership and the Court of Chancery in Delaware allegedly froze Plaintiffs' premium deposit paid to Harbor on behalf of Ullico. On or about March 13, 2013, all claim payments on Plaintiffs' policies were suspended, despite numerous pending and new claims. Meanwhile, Plaintiffs learned that they exceeded the net worth limit or were otherwise subject to restrictions imposed by several states regarding their workers' compensation claims, contrary to the advice Plaintiffs received. Illinois's guarantee fund denied coverage for three of Plaintiffs' workers' compensation claims in excess of $292,000 based on a net worth exclusion. Plaintiffs incurred uninsured legal fees in excess of $6,500. Indiana has placed a $100,000 maximum on a workers' compensation claim that is anticipated to be in excess of $500,000, plus legal fees and expenses.

3

(4:14CV2161)

Williams informed Plaintiffs that he was unaware of the net worth maximum exclusion and apologized for Plaintiffs' liability exposure. Plaintiffs also learned that John Doe Defendant 1, an unknown company owned and controlled by Harbor, reinsured losses owned by Ullico. Plaintiffs are not privy to the reinsurance, however, due to Ullico's insolvency and receivership.

Based on the problems with Ullico's workers' compensation coverage, Plaintiffs brought the following five claims against all Defendants: (1) fraud/misrepresentation; (2) broker/agent/producer negligence; (3) breach of fiduciary duty; (4) breach of contract; and (5) unjust enrichment. ECF No. 1. There are no attachments to Plaintiffs' Complaint. On November 5, 2014, Plaintiffs voluntarily dismissed their claims against Defendants RLI Corporation and RLI Transportation. ECF No. 11. Defendant RLI Insurance Company filed a Motion to Dismiss. ECF No. 14. Plaintiffs filed an opposition, to which they attached six exhibits. ECF No. 32. RLI filed a reply. ECF No. 36. The motion is now ripe for adjudication.

## II. Standard of Review

To survive a Rule 12(b)(6) motion, the complaint must allege enough facts to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "In reviewing a dismissal under Rule 12(b)(6), all allegations in the complaint should be taken as true, and the complaint is to be construed liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). A court may order dismissal "if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim." *Ashiegbu v. Purviance*, 76 F. Supp. 2d 824, 828 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th

4

(4:14CV2161)

Cir. 1999), *cert. denied*, 529 U.S. 1001, 120 S. Ct. 1287, 146 L. Ed. 2d 215 (2000).. Although "[a] district court is not permitted to consider matters beyond the complaint", *Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012), a court may consider "the Complaint and *any exhibits attached thereto*, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added). "While a complaint need not set down in detail all the particularities of a plaintiff's claim, the complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (internal quotation marks omitted). The plaintiff must do more than make bare legal conclusions. *Id.* at 725. The Court does not accept "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Lousville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

### III. Discussion

**A. Plaintiffs Have Failed to Make a Valid Fraud or Misrepresentation Claim**

Plaintiffs allege that RLI made certain fraudulent promises and misrepresentations regarding Ullico's solvency and state guarantee funds, promises upon which Plaintiffs relied. In order to establish a claim for intentional misrepresentation or fraud under Ohio law, a party must show (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent

5

(4:14CV2161)

of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Carpenter v. Scherer-Mountain Ins. Agency*, 733 N.E.2d 1196, 1205 (Ohio Ct. App. 1999); *see also Aetna Cas. and Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 540 (6th Cir. 2000) (citing *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984)).

The very first prong presents a roadblock for Plaintiffs. In their Complaint, Plaintiffs have failed to state what representation RLI made about Ullico and the workers' compensation insurance it provided Plaintiffs. The matter before the Court deals with workers' compensation insurance provided by Ullico and makes no allegations regarding the general insurance provided to Plaintiffs by RLI. Plaintiffs allege that Williams, an insurance agent for Safe Fleet, is also an "executive" of RLI. No factual allegations exist, however, about the allegedly fraudulent statements that RLI made, or that Williams may have made on RLI's behalf. The Complaint itself presents the theory that Williams acted on behalf of Safe Fleet, not RLI, when he presented Plaintiffs with Ullico's workers' compensation insurance program and when he encouraged Plaintiffs to remain with Ullico. The Complaint lacks any allegation that RLI made a misrepresentation or concealed information which it was obliged to disclose. In their opposition memorandum, Plaintiffs attempt to introduce an e-mail in which Williams discussed the prepaid workers' compensation insurance premium deposit paid by Plaintiffs, an e-mail that he signed "VP Marketing/Sales RLI Transportation Insurance." ECF No. 14-3. Because a district court can only consider matters beyond the complaint in a limited set of circumstances not applicable here, the Court will not consider any new evidence or factual allegations that Plaintiffs present in their opposition memorandum. *See Winget v. JP Morgan Chase*

6

(4:14CV2161)

*Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (stating that a district court is limited to the complaint when reviewing a motion to dismiss); *see also Dana Ltd v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 770, n. 2 (N.D. Ohio 2013) (stating that "a complaint cannot be amended by briefs in opposition to a motion to dismiss") (citation omitted).

Federal Rule of Civil Procedure 9(b) requires parties to "plead fraud . . . with particularity." As interpreted by the Sixth Circuit, the provision requires that, "*at a minimum* . . . the time, place, and content of the alleged misrepresentation" must be alleged. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (emphasis added). Plaintiffs' allegations against RLI have not met this minimum standard. Because Plaintiffs have failed to plead with sufficient particularity, the Court dismisses the misrepresentation and fraud claims against Defendant RLI.

**B. Plaintiffs Have Failed To Make A Valid Negligence Claim**

Plaintiffs allege that RLI owed them certain duties with respect to Ullico's workers' compensation insurance program. Under Ohio law, in order to make a claim for negligence, a plaintiff must prove that the defendant (1) owed a duty of care to the plaintiff; (2) breached that duty and (3) the breach of that duty proximately caused (4) injury to the plaintiff. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006) (citing *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 693 N.E.2d 271, 274 (Ohio 1998)). Plaintiffs have not alleged facts to show that RLI owed Plaintiffs a duty of care regarding the workers' compensation insurance coverage provided to them by Ullico. Plaintiffs allege that "Williams, as a representative of Safe Fleet . . . advised and recommended that Aim stay with Ullico." ECF No. 1 Page ID #: 9, ¶ 45. Nowhere in the Complaint

7

(4:14CV2161)

do Plaintiffs ask the Court to make the leap to the conclusory allegation that Williams advised Plaintiffs about Ullico on RLI's behalf. The Court will not do so now.

Plaintiffs argue that Ohio law recognizes a tort claim against insurance agents for negligent procurement. *Emahiser v. Complete Coverage Ins., LLP*, Case No. 14-267, 2014 WL 5037993, at *2 (N.D. Ohio, Oct. 8, 2014). "An agent will be held liable if 'as a result of his or her negligent failure to perform that obligation to procure insurance, the other party to the insurance contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking.'" *Id.* (quoting *Robson v. Quentin E. Cadd Agency*, 901 N.E.2d 835, 841 (Ohio Ct. App. 2008)). As an initial matter, Plaintiffs bring forth a general claim for negligence, not negligent procurement. *See Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1168 (1975) (stating that "there is no duty (on the part) of the trial court or the appellate court to create a claim which appellant has not spelled out in his pleading") (internal quotation marks omitted). Furthermore, Plaintiffs are asserting a negligence claim against RLI, an insurance company, not an insurance agent. *Emahiser*, therefore, is not applicable to the matter before the Court.

In their opposition, Plaintiffs further allege that "RLI is liable for the actions taken by its executive/insurance agent, Williams, who was obligated to advise Aim of the conflict presented by the complex relationship between defendants, including RLI, and obtain informed consent of the risks presented by Ullico's credit downgrade." ECF No. 32 at PageID#: 151. In their Complaint, however, Plaintiffs allege that Williams acted as a representative of Safe Fleet, not RLI, in recommending that Plaintiffs remain with Ullico. ECF No. 1 at PageID#:9, ¶ 45. Nor do Plaintiffs

8

(4:14CV2161)

bring claims against RLI based on RLI's status as the corporate parent of Safe Fleet. The Court dismisses Plaintiffs' negligence claim against RLI.

### C. Plaintiffs Have Failed To Make A Valid Breach of Fiduciary Duty Claim

Plaintiffs assert that RLI breached its fiduciary duty to Plaintiffs by failing to provide appropriate insurance advice and failing to disclose conflicts of interest. In order to establish a claim for breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) injury proximately caused by the breach. *Wells Fargo Bank, N.A. v. Sessley*, 932 N.E.2d 70 (Ohio Ct. App. 2010). Plaintiffs have failed to provide factual allegations for the contention that RLI owed Plaintiffs a fiduciary duty beyond the scope of the general liability, business automotive, or cargo insurance provided by RLI to Plaintiffs. The Court therefore dismisses Plaintiffs' breach of fiduciary duty claim against RLI.

### D. Plaintiffs Have Failed To Make A Valid Breach of Contract Claim

Plaintiffs allege that RLI breached its contract with Plaintiffs by a) failing to obtain adequate insurance coverage b) collecting and retaining amounts from Plaintiffs to which RLI was not entitled, including advance premiums; c) performing and providing inadequate work and failing to remedy the work; and d) failing to properly advise Plaintiffs regarding the financial risks associated with Ullico's deteriorating financial condition reflected by Ullico's credit downgrade. ECF No. 1 at PageID#:14, ¶ 82. In order to establish a breach of contract claim, a party must demonstrate: 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff. *Samadder v. DMF of Ohio, Inc.*, 798 N.E.2d 1141 (Ohio Ct. App. 2003); *Doner v. Snapp*, 649 N.E.2d 42 (Ohio Ct. App. 1994); *Thomas v. Publishers Clearing House,*

9

*Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002). Plaintiffs do not allege that RLI breached the insurance contract that provided Plaintiffs with general liability, business automobile, and cargo insurance. Plaintiffs fail to point to any contractual provision with RLI regarding Ullico. This omission is fatal to Plaintiffs' breach of contract claim, as it falls short of the requirements imposed by the *Iqbal-Twombly* line of cases. Additionally, Plaintiffs appear to abandon this claim in their memorandum in opposition to RLI's motion to dismiss. *See Bazinski v. JPMorgan Chase Bank, N.A.*, Case No. 13-14337, 2014 WL 1405253, *2 (E.D. Mich. April 11, 2014) ("[c]laims left to stand undefended against a motion to dismiss are deemed abandoned") (citation omitted). Accordingly, the Court dismisses Plaintiffs' breach of contract claim against RLI.

### E. Plaintiffs Have Failed to Make a Valid Unjust Enrichment Claim

Plaintiffs allege that RLI has derived value and retained benefits in a manner not consistent with Plaintiffs' interests. They argue that it would be unjust for RLI "to retain the benefits gained through wrongful misconduct, including the retention of Aim's advance insurance premium for which Aim is entitled to a refund." ECF No. 1 at PageID #: 14, ¶ 86. The requirements of a valid unjust enrichment claim are 1) plaintiff conferred a benefit on defendant; 1) defendant knew of such benefit; 3) defendant retained the benefit under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Cir. 2003). The existence of an express contract precludes claims for unjust enrichment. *See Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F.Supp. 1078 (S. D. Ohio 1992). Because there exists a valid contract between Plaintiffs and RLI, Plaintiffs' claims are precluded. Plaintiffs nonetheless allege that RLI was unjustly enriched through the

(4:14CV2161)

"'package deal' arrangement with Ullico that tied both insurers together in a quasi-contractual relationship to purportedly provide full coverage to Aim . . . RLI's relationship with Ullico created an improper incentive for RLI's executive, Williams, to continue to recommend renewal to Aim even after Ullico's credit rating was downgraded." ECF No. 32 at 8-9. Plaintiffs' Complaint fails to allege sufficient facts that RLI and Ullico were related or had a quasi-contractual relationship. Plaintiffs merely state that Safe Fleet and Williams presented insurance quotes, including a guaranteed cost program, as a package deal that afforded Plaintiffs lower premiums. ECF No. 1 at PageID#: 7, ¶ 31. The Court, therefore, will not consider any allegations regarding a quasi-contractual relationship.

Plaintiffs ask the Court to infer from their vague pleadings that RLI received a benefit from Plaintiffs' decision to renew Ullico's contract because the insurance options were presented in tandem. Plaintiffs, however, have failed to show how, if such a benefit existed, it would be unjust. RLI provides Plaintiffs with general liability, business automotive, and cargo insurance. Plaintiffs' allegations center on the workers' compensation insurance provided by Ullico and Ullico's eventual placement into receivership. Again, Plaintiffs seek to use Williams as the bridge between Ullico and RLI because he worked for Safe Fleet, which brokered the Ullico deal for Plaintiffs and RLI. Plaintiffs argue in their opposition memorandum that "[t]he evidence will reflect that [Plaintiffs] would not have selected RLI but for the package arrangement with Ullico and the guaranteed cost program offered as part of the deal." ECF No. 32 at 8-9. Regardless of what the evidence might show, this theory is missing from Plaintiffs' Complaint. Plaintiffs fail to present a plausible unjust enrichment claim against RLI based on the facts alleged in its Complaint.

11

(4:14CV2161)

Plaintiffs further argue that despite their best efforts, they were not able to discern the relationships between all the defendants prior to filing the Complaint. Seeking to amend a complaint with leave of court is a litigative tool known to Plaintiffs. *See* Fed. R. Civ. P. 15(a). The last sentence of Plaintiffs' opposition states "[a]lternatively, Aim should be permitted to file an amended complaint to cure any deficiency in the pleadings." ECF No. 32 PageID#: 12. Although Fed. R. Civ. P. 15 instructs courts to "freely give leave" to amend, that liberal policy does not apply to Plaintiffs' one sentence request. A "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LL P*, 622 F.3d 471, 486 (6th Cir. 2010) (internal quotation marks omitted).

### IV. Conclusion

For the reasons stated, Plaintiffs have failed to plead plausible allegations against RLI and failed to properly seek to amend their Complaint. Accordingly, RLI's Motion to Dismiss (ECF No. 14) is granted in its entirety.

IT IS SO ORDERED.

| | |
|---|---|
| April 30, 2015 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |