UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AIM LEASING COMPANY<br>  dba AIM NATIONALEASE<br>1500 Trumbull Road<br>Girard, OH 44420<br><br>and<br><br>AIM LEASING DRIVERS COMPANY<br>  dba AIM DEDICATED LOGISTICS<br>1500 Trumbull Road<br>Girard, OH 44420<br><br>and<br><br>AIM INTEGRATED LOGISTICS, INC.<br>1500 Trumbull Road<br>Girard, OH 44420<br><br>      Plaintiffs<br><br>v.<br><br>SAFE FLEET INSURANCE SERVICES,<br>  INC.<br>111 Pacifica, Suite 350<br>Irvine CA 92618<br><br>and<br><br>DAVID WILLIAMS<br>2970 Clairmont Road, NE, #1100<br>Atlanta, GA 30392<br><br>and<br><br>MAIN STREET AMERICA MGA INC.<br>21977 E. Wallis Drive<br>Porter, TX 77365<br><br>and | CASE NO.: 4:14-cv-02161<br><br>JUDGE: BENITA Y. PEARSON<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br>[JURY DEMAND ENDORSED HEREON] |

00670447v3

| | |
|---|---|
| HARBOR AMERICA SPECIALTY BROKERAGE, LLC<br>23910 A Highway 59 North<br>Kingwood, TX 77339 | )<br>)<br>)<br>) |
| and | ) |
| HARBOR AMERICA SPECIALTY BROKERAGE, LLC<br>CT Corporation System<br>1300 East 9th Street<br>Cleveland OH 44114 | )<br>)<br>)<br>)<br>) |
| and | ) |
| RICK WALKER<br>23910 A Highway 59 North<br>Kingwood, TX 77339 | )<br>)<br>) |
| and | ) |
| RED HAWK RE SPC<br>Whitehall House, 3rd Floor<br>238 North Church Street<br>PO Box 699, George Town<br>Cayman Islands, KY1-1107 | )<br>)<br>)<br>)<br>) |
| and | ) |
| JOHN DOE DEFENDANT 2 | ) |
| and | ) |
| JOHN DOE DEFENDANT 3 | ) |
| Defendants | ) |

For its First Amended Complaint against defendants Safe Fleet Insurance Services, Inc., David Williams, Main Street America MGA Inc., Harbor America Specialty Brokerage, LLC, Rick Walker, Red Hawk RE SPC and John Does 2-3 (collectively "defendants"), Aim Leasing

Company dba Aim NationaLease, Aim Leasing Drivers Company dba Aim Dedicated Logistics and Aim Integrated Logistics, Inc. (collectively "Aim" or "Aim plaintiffs") state as follows:

## THE PARTIES

1. Plaintiff Aim Leasing Company dba Aim NationaLease is a full service truck leasing business operating throughout the United States of America, but with headquarters in Trumbull County, Ohio.

2. Plaintiffs Aim Leasing Drivers Company dba Aim Dedicated Logistics and Aim Integrated Logistics, Inc. are entities related to Aim Leasing Company and its business including truck leasing and transportation logistics, and are also headquartered in Trumbull County, Ohio.

3. Plaintiffs shall collectively be referred to as "Aim" throughout this Complaint.

4. Defendant Safe Fleet Insurance Services, Inc. ("Safe Fleet") is one of Aim's insurance brokers and/or placement agencies. Safe Fleet is headquartered in the State of Georgia, but operates and conducts business directly in Ohio.

5. Defendant Safe Fleet is registered as an Ohio foreign business licensed to do business in Ohio.

6. Upon information and belief, defendant Safe Fleet is a related entity, division, and/or subsidiary of RLI Corp., RLI Insurance Company, and/or RLI Transportation (collectively "RLI").

7. Safe Fleet brokered and/or placed various types of insurance for Aim directly through RLI and another non-party to this action, Ullico Casualty Company ("Ullico"), as further described below.

8. Defendant David Williams ("Williams") is a Vice President and General Manager with Safe Fleet who was primarily responsible for designing, managing, brokering, and placing insurance for Aim and resides in the State of Georgia.

9. Between 2009 and 2013, Williams was physically present within the State of Ohio approximately three to four times annually when he met with Aim's executives regarding insurance coverage.

10. Upon information and belief, Williams is also an executive with RLI.

11. Defendant Main Street America MGA Inc. ("Main Street") is an insurance producer and agency that provided workers' compensation insurance quotes to Aim at the direction of Safe Fleet, Williams, and Walker. Main Street is headquartered in the State of Texas, but conducts business directly in the State of Ohio.

12. Main Street served as the agent of record for Aim's workers' compensation insurance placed with Ullico and/or a producer pursuant to Aim's policies.

13. Defendant Harbor America Specialty Brokerage, LLC ("Harbor") is an insurance broker for Aim and responsible for receiving wired deposits and premium payments from Aim.

14. Upon information and belief, Harbor also serves as a managing general agent and/or underwriter for Ullico's workers' compensation program.

15. Defendant Rick Walker is a Vice President of Harbor and resides in Texas.

16. Upon information and belief, Walker is also an executive with Main Street.

17. Defendant Red Hawk RE SPC ("Red Hawk") is a reinsurer of Ullico and reinsured part or all of Aim's insurance placed with Ullico. Red Hawk is, upon information and belief, a corporation organized under the laws of the Cayman Islands and is affiliated with Main Street, Harbor, and Walker, and is conducting business within the State of Ohio.

4

18. Red Hawk received a portion of Aim's advance insurance premium payments and reinsurance premiums applicable to Aim's Ullico workers' compensation policy.

19. John Doe Defendants 2 and 3 are entities and/or individuals who were involved in securing, brokering, and obtaining insurance coverage for Aim, but whose identities are unknown despite reasonable and diligent investigation.

## JURISDICTION AND VENUE

20. During the Relevant Period between 2009 and 2013 (the "Relevant Period"), the transactions and occurrences set forth herein occurred within and about Trumbull County, Ohio.

21. By virtue of the significant contacts the parties and material events have with the State of Ohio, and in particular Trumbull County, as set forth herein, this matter is properly venued in the United States District Court for the Northern District of Ohio, Eastern Division.

22. There is diversity of citizenship among the parties who are residents of different States. Pursuant to 28 U.SC. §1332(a)(1), this court has jurisdiction over this matter in controversy.

23. The amount in controversy in this matter, exclusive of interest and cost, exceeds the sum of $75,000 as specified by 28 U.S.C. §1332.

## THE SAFE FLEET AND ULLICO POLICIES AND RENEWAL

24. During the Relevant Period, Aim engaged and relied upon Safe Fleet and Dave Williams to design, place, broker, and/or provide its general liability, business automobile, cargo, and workers' compensation insurance.

25. Safe Fleet and Williams were engaged to consult and advise Aim regarding all aspects of Aim's insurance coverage.

26. During the Relevant Period, Safe Fleet and Williams presented insurance quotes and proposals for Aim for general liability, business automobile, and cargo insurance.

27. During the Relevant Period, Safe Fleet and Williams presented to Aim insurance quotes and proposals for Aim provided by Harbor, Walker, Main Street, and Red Hawk for placement of insurance through Ullico's workers' compensation insurance program.

28. Aim reasonably relied upon Safe Fleet, Williams, Main Street, and Walker's expertise, experience, and advice in obtaining its insurance coverages for the Relevant Period.

29. Safe Fleet, Williams, Main Street, Harbor, and Walker presented Ullico insurance quotes, including a guaranteed cost program, as a package deal that afforded Aim access to insurance and savings on premiums if insurance coverage was secured from Safe Fleet and Ullico simultaneously and in combination with both entities.

30. Upon information and belief, defendants designed the insurance arrangement between and among them which involved other insurers and reinsurers, including Red Hawk, who had financial interests that were ultimately adverse to Aim's interest in obtaining secure, credit worthy insurance for its risks.

31. In reliance upon defendants' advice and recommendations, Aim engaged Safe Fleet and Ullico for insurance coverage.

32. After Aim first awarded its business to Safe Fleet and Ullico, Williams was Aim's primary point of communication for any policy or coverage issues.

33. Ullico issued four annual Workers' Compensation & Employer's Liability Policies to Aim for the policy periods August 1, 2009 through February 1, 2013 (hereinafter "The Ullico Policies").

34. The advance premium for The Ullico Policies was based upon an estimate of the applicable payroll/remuneration for Aim. Premiums for the workers' compensation policy were based on actual payroll. Any over or under payment of premiums paid as a result of the advance payment were subject to refund or additional premium charge.

35. At the conclusion of the policy period, Ullico was required to adjust and/or refund to Aim any overpayment of premium payments based upon actual payroll/remuneration amounts made during the period.

36. Aim agreed to renew its workers' compensation coverage with Ullico on or about January, 2012 for policies effective February 1, 2012.

37. On February 1, 2012, Aim made a deposit payment to Ullico for Ullico Policy No. WCS-113031-03, for the policy period February 1, 2012 to February 1, 2013, in an amount in excess of $193,275 ("The Deposit").

38. Upon information and belief, The Deposit was distributed between and among Main Street, Ullico, Harbor and Red Hawk and John Doe Defendants 2 and 3, pursuant to agreements and reinsurance agreements between and among the defendants.

## ULLICO IS DOWNGRADED

39. At the time of Aim's renewal with Ullico in 2012, Aim was advised by Safe Fleet, Williams, and Walker that Ullico's financial strength was a B+ rated (good).

40. On or about February 7, 2012, Ullico's financial strength rating was downgraded to a B (fair).

41. Aim learned of the downgrade soon after it occurred and contacted Safe Fleet and Williams for advice concerning its impact on Aim's workers' compensation insurance coverage.

7

42. On or about March 7, 2012, a telephone conference call occurred to discuss Ullico's downgrade and what actions Aim should take to protect itself and its insurance coverage.

43. Participants in the telephone call included Aim's executives, Ullico's CFO, Sara Gustafson, Williams, Walker, and other representatives of defendants.

44. Williams, as a representative of Safe Fleet, and Walker, as a representative of Main Street, and Harbor advised and recommended that Aim stay with Ullico.

45. Defendants' recommendation was based in part upon their understanding that each state in which Aim conducted business offered a "guarantee fund" which served as a back-up or additional last-resort insurer of workers' compensation claims.

46. In other words, defendants Williams and Walker advised Aim that it could rely upon state guarantee funds in the event Ullico was unable to satisfy Aim's workers' compensation claims.

47. Defendants further advised Aim that there were "no limits" on workers' compensation claim coverage by state guarantee funds.

48. Based upon defendants' advice and recommendations, Aim remained with Ullico.

### ULLICO IS PLACED INTO RECEIVERSHIP AND AIM LOSES ITS DEPOSIT

49. In early 2013, Ullico was placed into receivership before the Court of Chancery in the State of Delaware.

50. On or about March 13, 2013, all claim payments on Aim's policies with Ullico were suspended, including any settlement or indemnity payments.

51. Aim's prepaid workers' compensation premium deposit paid to Harbor on behalf of Ullico was also allegedly frozen by the Delaware court.

8

52. At the time of the suspension of Aim's workers' compensation coverage through Ullico, Aim had numerous claims pending.

53. In addition, Aim was subject to several new workers' compensation claims.

54. Aim subsequently learned that contrary to what defendants advised them, several states impose a "net worth" maximum or other limitations on liability coverage over which the state guarantee fund will not assume responsibility for workers' compensation claims.

55. Aim learned that it exceeded the net worth limit or was otherwise subject to restrictions imposed by several states including Illinois and Indiana, and its workers' compensation claims there would not be covered in whole or in part by those states' guarantee funds.

56. In short, Aim was not fully insured by the guarantee funds that defendants assured Aim would provide coverage if Ullico became insolvent.

57. The State of Illinois' guarantee fund denied coverage for three of Aim's workers' compensation claims totaling in excess of $292,000 based on a net worth exclusion.

58. Aim incurred uninsured legal fees and expenses to resolve the Illinois claims totaling in excess of $6,500.

59. Aim is the subject of a significant pending workers' compensation claim previously venued in Kentucky, which was transferred to Indiana. Indiana's guarantee fund has accepted coverage for the claim up to a maximum of $100,000; however, the claim is anticipated to be in excess of $500,000, plus legal fees and expenses.

60. On June 18, 2013, Williams stated that he had "never heard" of the net worth maximum exclusion and that he was "truly sorry" for causing Aim to have an uninsured workers' compensation liability exposure.

61. Aim also learned that, non-party Ullico acted as a fronting agent for Harbor. Losses insured by Ullico, unbeknownst to Aim, were reinsured through Red Hawk company owned and controlled by Harbor.

62. Red Hawk is obligated to provide reinsurance coverage for Aim's claims and losses insured through the Ullico Policies. (Exhibit 1.)

## COUNT I

## FRAUD/MISREPRESENTATION

63. At the specific dates, times, and locations described herein, defendants made certain misrepresentations, promises, and guarantees regarding Aim's insurance coverage and liability in the event Ullico was insolvent or unable to pay certain claims, including that state guarantee funds would cover the full amount of any loss.

64. Plaintiffs were induced by such representations and misrepresentations to continue insurance coverage with Ullico despite its credit downgrade.

65. Plaintiffs reasonably relied upon these representations and misrepresentations to their detriment.

66. As a direct and proximate result of defendants' fraud and misrepresentations, plaintiffs have been damaged (and will continue to be damaged) in an amount in excess of $500,000, the exact amount of which shall be established at the trial of this action.

67. Defendants' actions were intentional, reckless, willful, wanton, malicious, and calculated to inflict harm on plaintiffs so as to justify an award of punitive damages under applicable law.

## COUNT II

### BROKER/AGENT/PRODUCER NEGLIGENCE

68. Plaintiffs incorporate the statements and averments contained in paragraph 1 through 67 above.

69. As broker, agent and producer for Aim, defendants owed Aim certain responsibilities, duties and obligations.

70. Among the responsibilities, duties and obligations owed by defendants to Aim was to advise Aim, among other things:

    a. Aim needed to obtain a cut-through endorsement to protect Aim in the event Ullico became insolvent if it continued to be insured through this entity.

    b. To search for and present Aim with options for coverage other than through Ullico.

    c. To obtain Aim's written informed consent of the risks associated with retaining insurance coverage through Ullico.

    d. To regularly monitor Ullico's financial well-being and credit worthiness, given its credit rating of B+ and downgrade to B.

    e. To obtain Aim's written informed consent concerning the conflict of interest presented by the undisclosed interrelationship between defendants, including Walker, Harbor, Main Street, Williams and Safe Fleet, whereby defendants had conflicting financial interests and served Aim in a dual capacity which created conflicts of interest detrimental to the best interests of Aim.

    f. Williams was aware of the foregoing conflicts of interest and failed to inform and advise Aim of their existence and the risks in the event Ullico failed.

    g. Williams failed to obtain insurance through an acceptable credit worthy market.

    h. To secure Aim's right to seek coverage from Ullico's reinsurers, including Red Hawk, and/or a refund from Defendants for Aim's advance insurance premium payments.

71. Defendants' actions were intentional, reckless, willful, wanton, malicious, and calculated to inflict harm on Aim so as to justify an award of punitive damages under applicable law.

## COUNT III

## BREACH OF FIDUCIARY DUTY

72. Plaintiffs incorporate the statements and averments contained in paragraph 1 through 71 above.

73. As the brokers, agents, and producers for Aim, defendants owed Aim certain fiduciary duties including without limitation loyalty, to deal in good faith, to avoid conflicts of interest, and to deal or conduct themselves in a manner reasonably believed to be in the best interest of Aim.

74. Defendants breached their fiduciary duties to Aim by, among other things:

   a. Failing to provide appropriate insurance advice and/or to obtain appropriate insurance coverage including endorsements to protect Aim from loss;

   b. Failing to disclose conflicts of interest that provided incentives for defendants' personal gain and the gain of others including Walker, Main Street, and Harbor that were counter to the interests of Aim.

75. Defendants' conduct and breaches of fiduciary duty were deliberate and were undertaken with reckless disregard for the best interests of Aim and cause Aim injury.

76. As a direct and proximate result of defendants' breaches of fiduciary duties, Aim has been damaged in an amount in excess of $500,000.

77. Defendants' actions were intentional, reckless, willful, wanton, malicious, and calculated to inflict harm on Aim so as to justify an award of punitive damages under applicable law.

## COUNT IV

## BREACH OF CONTRACT

78. Plaintiffs incorporate the statements and averments contained in paragraph 1 through 77 above.

79. As set forth above, Aim and defendants reached an agreement with and contracted with defendants for obtaining, brokering and providing of insurance.

80. Plaintiffs have completely performed their obligations as consideration pursuant to the contract with defendants, including paying defendants in full including the pre-payment of their premium.

81. Defendants have breached the contract with plaintiffs by, among other things, without limitation:

      a. Failing to obtain adequate insurance coverage;

      b. Collecting and retaining amounts from Aim to which defendants were not entitled including advance premiums;

      c. Performing and providing inadequate work and failing to remedy the work;

      d. Failing to properly advise Aim regarding the financial risks associated with Ullico's deteriorating financial condition reflected by Ullico's credit downgrade.

82. As a direct and proximate result of defendants' breaches of contract and bad faith, plaintiffs have been damaged in an amount in excess of $500,000, the exact amount to be proven at trial.

## COUNT V

## UNJUST ENRICHMENT

83. Plaintiffs incorporate the statements and averments contained in paragraph 1 through 82 above.

84. As a result of the aforementioned acts, acts of negligence, breaches of fiduciary duty, and conflicts of interest, defendants have derived a value and personally and corporately benefited in a manner not consistent with the interests of Aim.

85. Under the circumstances, it would be unjust for defendants to retain the benefits they gained through wrongful misconduct, including the retention of Aim's advance insurance premium for which Aim is entitled to a refund.

86. Defendants have been unjustly enriched and plaintiffs have been damaged in an amount in excess of $500,000.

87. Defendants' actions were intentional, reckless, willful, wanton, malicious, and calculated to inflict harm on Aim so as to justify an award of punitive damages under applicable law.

## COUNT VI

## THIRD-PARTY BENEFICIARY

88. Plaintiffs incorporate the statements and averments contained in paragraph 1 through 87 above.

89. Aim was an intended third-party beneficiary to agreements between Ullico, Red Hawk, Defendants, and John Doe Defendants 2 and 3 whereby Red Hawk reinsured Aim's workers' compensation claims and losses covered by the Ullico Policies.

90. Red Hawk and John Doe Defendants 2 and 3 received a portion of Aim's advance insurance premiums.

91. As a third-party beneficiary and by virtue of Red Hawk's receipt of Aim's advance premium deposit, Aim is entitled to a declaratory judgment enforcing the reinsurance agreements between Ullico, Red Hawk, Defendants, and John Doe Defendants 2 and 3 to obtain coverage and benefits under the agreements.

WHEREFORE, plaintiffs pray that judgment be entered in their favor as follows:

a. Damages in excess of $500,000 including prejudgment interest, costs, and attorneys' fees to be proven at trial.

b. Punitive damages.

c. A declaratory judgment that Aim is a third-party beneficiary to reinsurance agreements between Defendants including Red Hawk and that Aim and entitled to coverage and benefits under the Ullico/Red Hawk reinsurance agreement.

d. For such other relief as the Court deems just and appropriate.

## JURY DEMAND

A trial with the maximum number of jurors permitted by law is hereby requested.

Respectfully Submitted,

/s/ Richard G. Witkowski
RICHARD G. WITKOWSKI (0009839)
NICHOLAS J. DERTOUZOS (0071018)
Attorneys for Plaintiffs
NICOLA, GUDBRANSON & COOPER, LLC
1400 Republic Building
25 W. Prospect Avenue
Cleveland, Ohio 44115
Phone:  (216) 621-7227
Fax:  (216) 621-3999
Email:  witkowski@nicola.com
         dertouzos@nicola.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2015, a copy of foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard G. Witkowski
RICHARD G. WITKOWSKI (0009839)
One of the Attorneys for Plaintiffs