IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AIM LEASING COMPANY<br>d/b/a AIM NATIONALEASE, *et al.*, | ) ) | CASE NO.  4:14-cv-02161 |
| | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| Plaintiffs, | ) | |
| | ) | **MOTION OF DEFENDANTS MAIN** |
| v. | ) | **STREET AMERICA MGA, INC.** |
| | ) | **AND RICK WALKER** |
| RLI CORP., *et al.*, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendants. | ) | |

Defendants Main Street America MGA, Inc. and Rick Walker move for summary judgment

in their favor, pursuant to Civ.R. 56(a), on all claims remaining against them. The grounds and

authorities supporting this motion are set forth more fully in the attached Memorandum in Support.

Respectfully submitted,


*/s/ George H. Carr*
JASON D. WINTER (#0076191)
GEORGE H. CARR (#0069372)
JANIK L.L.P.
9200 South Hills Boulevard, Suite 300
Cleveland, OH  44147-3521
440-838-7600 – Main ♦| 440-838-7601 – Fax
Email:    Jason.Winter@Janiklaw.com
              George.Carr@Janiklaw.com

*Attorneys for Defendants, Main Street America MGA,*
*Inc. and Rick Walker*

681069

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AIM LEASING COMPANY<br>d/b/a AIM NATIONALEASE, *et al.*, | ) | CASE NO.  4:14-cv-02161 |
| | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OF DEFENDANTS** |
| v. | ) | **MAIN STREET AMERICA MGA, INC.** |
| | ) | **AND RICK WALKER** |
| RLI CORP., *et al.*, | ) | **IN SUPPORT OF MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| Defendants. | ) | |

**I.        Introduction and Summary of Argument**

Plaintiffs purchased workers' compensation insurance policies from Ullico Casualty Company (hereinafter, "Ullico") for the policy periods 2009-2013. During these policy periods, Defendant Main Street America MGA, Inc. ("MSA"), was Ullico's "Managing General Agent," and issued price quotations in connection with the inception and renewal of Plaintiffs' policies. When Ullico was declared insolvent in 2013, Plaintiffs were allegedly exposed to liability for uncovered workers' compensation claims.

Plaintiffs sued Main Street America MGA, Inc. and its principal, Rick Walker (collectively, "MSA"), under several legal theories; Defendants Safe Fleet Insurance Services, Inc., and its principal, David Williams (collectively, "SFIS") asserted cross-claims against MSA for contribution and indemnity. The crux of these claims was that MSA misrepresented and/or failed to disclose information relating to the consequences of Ullico's insolvency, most importantly the availability of reinsurance and/or the eligibility requirements of various state guaranty funds pertaining to workers' compensation.

678559; 0753-0008

2

681069

At the close of discovery, Plaintiffs voluntarily dismissed their claims against MSA. (ECF #___.) Accordingly, the only remaining claims against MSA are the cross-claims asserted by SFIS. These cross-claims have no merit.

The chief basis for SFIS's cross-claims is a pair of contracts with MSA containing indemnification provisions. The first, an Independent Representative Agreement dated May 13, 2009, ("IR Agreement") indemnifies SFIS against claims "resulting from any breach of any warranties, or representations or agreements made between [Plaintiffs] and [MSA]." The second, an Agency Agreement dated June 19, 2010 ("Agency Agreement"), indemnifies SFIS against claims "caused directly by an error of [MSA] in the processing of any business placed and/or attempted to be placed by [SFIS] with [MSA]." Neither contract indemnifies SFIS against the claims asserted against it; MSA made no warranties or representations to Plaintiffs, and SFIS testified in deposition that MSA made no material errors in processing the business placed by SFIS.

Independent of these contracts, SFIS also asserts common-law claims for implied indemnification and contribution, which lack legal and evidentiary merit. Common-law implied indemnification is only available where SFIS is being held liable for MSA's actions, and had no involvement in the allegedly tortious activity; here, Plaintiffs seek to hold SFIS liable for its own actions. Similarly, contribution is only available where two parties "are jointly and severally liable in tort" for a single indivisible injury; here, as evidenced by undisputed deposition testimony, there is no basis for MSA to be liable to Plaintiffs, and therefore no basis for SFIS' contribution claims.

As can be seen from the discussion below, MSA is entitled to summary judgment on all of the cross-claims asserted against it by SFIS.

## II.     Facts

In July 2011, MSA became Ullico's "managing general agent," a company that "manages all or part of the insurance business of an insurer." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 678559; 0753-0008

681069

409 n. 5 (quoting Cal. Ins. Code § 769.819(c)). (Deposition of Rick Walker, ECF #___ [hereinafter "Walker Dep."] at 9.)

In this capacity, and in MSA's previous capacity as Ullico's broker, MSA produced written quotations for Plaintiffs' workers' compensation insurance policies. (Deposition of David Williams, ECF #111 [hereinafter "Williams Dep."] at 197.) Plaintiffs and their agent, SFIS, relied on these quotations in selecting an insurance carrier for each policy term. (Williams Dep. at 197-198.) Before Ullico's insolvency in 2013, MSA made no other representations to Plaintiffs or SFIS. (Williams Dep. at 201.)[1]

Plaintiffs confirmed they did not rely on any representations from MSA or Walker in deciding to procure or renew their workers' compensation insurance with Ullico. Plaintiffs' President testified clearly:

> Q:    Did you personally rely upon any statements or communications from any employee or representative of Main Street when it came to the initial selection of Ullico as your workers' compensation carrier?
> A:    We did not.
> Q:    And as it relates to the renewal process that took place each year, would your answer be the same?
> A:    Correct, it would be.
> Q:    And as it relates to the decision to stay with Ullico as your workers' compensation carrier, following the downgrade by A.M. Best to B- from B-plus, is it the case that you did not rely upon any statements or communications from any representative or employee of Main Street to ultimately make the decision to stick with Ullico?
> A:    That's correct.

(Deposition of Tom Fleming, ECF #112 [hereinafter "Fleming Dep."] at 97.) Mark Mitcham, Plaintiffs' Director of Insurance and Compliance, confirmed this testimony. (Deposition of Mark Mitcham, ECF #___ [hereinafter "Mitcham Dep."] at 71-72.)

---

[1] Walker did allegedly promise to cover any claims against Plaintiffs arising from a lack of "stop gap" coverage in 2013. (Williams Dep. at 199.) Even assuming this promise is a representation for purposes of the claims at issue here, it is irrelevant to Plaintiffs' claims in this suit; moreover, this lack of "stop gap" coverage never actually caused any harm to Plaintiffs.

678559; 0753-0008

4

681069

In light of this unrebutted testimony, MSA cannot be liable in indemnity or contribution to

SFIS, as discussed below.[2]

### III.  Law and Argument

### A.  No Contractual Indemnity Covers Plaintiffs' Claims Against SFIS

"The role of the Court in interpreting a contract is to ascertain the intent of the parties,

which is presumed to reside in the language they used in their agreement." *Goodyear Tire &*

*Rubber Co. Lockheed Martin Corp.*, N.D.Ohio 5:13-cv-2465, 2014 WL 4852129 (Sept. 29, 2014)

(Lioi, J.). "Indemnification agreements are generally enforced in Ohio … and are interpreted the

same way that courts interpret contracts." *Id.*, citing *Papatheodorou v. Clark*, 781 F.Supp.2d 582,

586 (N.D.Ohio 2011) (Oliver, C.J.). In determining questions of contractual indemnity, a court

must give effect to "[w]hat was intended by the parties, as evidenced by the words utilized in the

agreement at issue." *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 48, 505 N.E.2d 264, 267

(1987).

There are two contracts between MSA and SFIS; neither provides for indemnification by

MSA of Plaintiffs' claims against SFIS. The IR Agreement provides, in pertinent part:

> [MSA][3] agrees to indemnify and hold [SFIS], its subsidiaries,
> officers, employees, Sub-agents and agents harmless from and
> against any and all expenses, damages, liability, claims,
> encumbrances, deficiencies, costs or expenses <u>resulting from any
> breach of any warranties, or representations or agreements made
> between Customer and [MSA]</u>.
> With respect to the representation of [MSA] to prospective
> Customers, [SFIS] shall make no written or oral statements,
> warranties, or representations other than those authorized by [MSA].
> [SFIS] agrees to indemnify and hold [MSA], its subsidiaries,
> officers, employees, and agents harmless from and against any and
> all expenses, damages, liability, claims, encumbrances, deficiencies,

---

[2] In correspondence between the parties, pursuant to this Court's order that voluntary dismissal be discussed before moving for summary judgment, SFIS did not deny or distinguish any of this testimony, but instead argued that "pleading deficiencies" in Plaintiffs' claims required that its cross-claims be pursued. (Ex. 1, 2 at 2.)

[3] The party named in the IR Agreement is Harbor America Holdings, Inc. and "any and all related entities." (Ex. 3 at 1.) MSA does not dispute that it is a "related entity" for purposes of the IR Agreement, as Harbor America Holdings is operated by Doug Lowery, who was a partner in Main Street with Mr. Walker. (Walker Dep. at 7, 110.)

678559; 0753-0008

681069

> costs or expenses resulting from any intentional misrepresentation, intentional wrongful act or breach of this Agreement by [SFIS].

(Ex. 3 at 3-4 (emphasis added).) As written, this clause does not cover claims arising from SFIS' own actions, but indemnifies only against claims made against SFIS resulting from warranties, representations, or agreements given by MSA.

In this case, however, Plaintiffs' claims center on allegations that they were induced to purchase and renew workers' compensation insurance from Ullico by Defendants' false representations relating to the consequences of Ullico's insolvency. Plaintiffs do not allege that SFIS' liability arises from any representations or advice given by MSA; to the contrary, they originally alleged that both SFIS and MSA, as joint tortfeasors, had made representations and/or omissions that induced Plaintiffs to purchase from Ullico. Nothing in Plaintiffs' Amended Complaint alleges or implies that SFIS is liable because of representations or warranties made by MSA; the language of the IR Agreement cannot be stretched to require that MSA indemnify SFIS against Plaintiffs' claims.

Moreover, even if Plaintiffs' allegations somehow implicate the indemnification clause of the IR Agreement, unrebutted evidence makes clear that SFIS' alleged liability does not arise from any conduct of MSA. In deposition, Plaintiffs conceded under oath that they had not, in fact, relied on MSA in making any decisions related to the procurement and renewal of their Ullico policies; soon after, they dismissed their claims against MSA. SFIS' principal, Mr. Williams, similarly testified in deposition that MSA made no representations to Plaintiffs or SFIS prior to Ullico's insolvency, other than quoting the price of various insurance policies. (Williams Dep. at 201.) SFIS also testified that SFIS did not rely on MSA for any professional advice or recommendations, or pass on any such advice or recommendations to Plaintiffs. (Williams Dep. at 219.)

In short, there is no evidence from which a factfinder could conclude that SFIS' liability results from "any breach of any warranties, or representations or agreements made between

678559; 0753-0008

6

681069

Customer and [MSA]," which might require MSA to indemnify SFIS under the IR Agreement. Plaintiffs allege no breach of warranty, and the evidence is undisputed that MSA made no representations to, or agreements with, the Plaintiffs here. Accordingly, SFIS owes no duty to indemnify SFIS under the IR Agreement.

The Agency Agreement is similarly inapplicable. It provides, in pertinent part:

> [SFIS] shall indemnify and hold [MSA][4] harmless against any claims, liabilities or costs (including attorney's fees and expenses), which [MSA] may become obligated to pay as a result of loss to any Insured caused directly by an error of [SFIS] in the processing of any business placed and/or attempted to be placed by [SFIS] with [MSA]. [MSA] shall indemnify and hold [SFIS] harmless against any claims, liabilities or costs (including attorney's fees and expenses), which [MSA] may become obligated to pay as a result of loss to any Insured <u>caused directly by an error of [MSA] in the processing of any business placed and/or attempted to be placed</u> by [SFIS] with [MSA].

(Ex. 4 at ¶ 9 (emphasis added).) As written, this clause does not cover damages caused by SFIS' own actions, but indemnifies only against claims made against SFIS resulting from MSA's "errors" in "processing of any business." "Processing" is commonly defined as "systematic" and "mechanized" or "mechanical" activity;[5] the most appropriate definition of this phrase, in the context of the Agency Agreement, is that MSA must indemnify SFIS for claims arising from MSA's administrative and clerical errors in the placement and renewal of insurance policies; such claims might plausibly include erroneous names, terms, and dates of insurance paperwork, or undue delay in binding coverage. But here, Plaintiffs do not allege that SFIS' liability arises from any administrative or clerical issues with the placement of insurance; they allege that SFIS caused Plaintiffs, by misrepresentation and/or omission, to obtain inadequate insurance coverage.

---

[4] The party named in the Agency Agreement is "First Main Street America Insurance Agency dba Harbor America Specialty Brokerage, LLC." (Ex. 4 at 1.) Again, MSA does not dispute that this refers to MSA; Mr. Walker clarified in deposition that the "First Main Street" entity was a licensed California affiliate created when MSA's name conflicted with that of another California company. (Walker Dep. at 28-29.)

[5] *See, e.g.,* http://www.oxforddictionaries.com/us/definition/american_english/process, at verb 1, noun 1.2 (accessed April 28, 2016).

678559; 0753-0008

681069

Accordingly, MSA cannot be required to indemnify SFIS from Plaintiffs' claims, under the Agency Agreement.

Moreover, SFIS confirmed in deposition that MSA made no errors in its "processing of any business." In deposition, Mr. Williams testified that MSA did not initially handle claims activity on Plaintiffs' account in accordance with his high standards; while this was customer service below "the level that we expected," MSA's occasionally substandard claims handling nonetheless satisfied the industry's standard of care for claims handling, and caused no damage to anyone. (Williams Dep. at 224-225.) Moreover, these customer service issues were resolved by 2010. (Williams Dep. at 226.) Other than these immaterial complaints, MSA committed no "errors" in the handling of Plaintiffs' business, and did not cause any damage to Plaintiffs. (Williams Dep. at 226.) In light of this unrebutted evidence, this Court must conclude that MSA has no duty to indemnify SFIS against Plaintiffs' claims, as they are outside the limited scope of the indemnification language in the Agency Agreement.

In sum, SFIS' claims for contractual indemnification lack legal and factual merit, because the Plaintiffs' claims fall outside the limited scope of both contracts' duty of indemnification, and the unrebutted evidence allows a factfinder to reach only one conclusion, that (1) MSA made no representations to Plaintiffs that relate to their claims against SFIS, and (2) MSA made no errors in the processing of Plaintiffs' business. Accordingly, there is no genuine issue of material fact in dispute, and MSA should be granted summary judgment.

**B.  Implied Indemnification Does Not Apply, and is Contrary to the Evidence**

Next, SFIS alleges that MSA owes a duty of common-law indemnity to SFIS, as to Plaintiffs' claims. MSA is entitled to summary judgment on this claim also, for three reasons.

First, an implied contract of indemnification is not available where a written contract defines the terms of the parties' indemnification relationship. *Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 125, 443 N.E.2d 497, 500 (1982) (duty of indemnification was only as stated in written 678559; 0753-0008

8

681069

contract); *Worth v. Aetna Cas. & Surety Co.*, 32 Ohio St.3d 238, 240, 513 N.E.2d 253, 256 (1987) ("Indemnity arises from contract, either express or implied. *** The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used."); *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F.Supp.2d 800, 804 (Carr, C.J.) (where "the parties could have contracted for indemnity and did not do so," no implied contract for indemnity existed); *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975) (Ohio permits no recovery on such theories [as implied or "quasi-contract"] where, as here, an 'express contract covers the same subject."); *Williams v. Goodyear Aircraft Corp.*, 84 Ohio App. 113, 117, 85 N.E.2d 601, 604 (9th Dist. 1948) (rejecting existence of implied contract where written contract existed). Here, because the IR Agreement and/or the Agency Agreement define the terms of the indemnification duties between SFIS and MSA, no duty of implied or common-law indemnification exists.

Second, common-law indemnification only arises under facts not present here, "where a person is chargeable with another's wrongful act." *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 14, 321 N.E.2d 787, 789 (1975). For instance, a master held liable because of its servant's negligence has an implied common-law right of indemnification against the servant. *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 394, 1995-Ohio-119, 653 N.E.2d 235, 238 (implied indemnity exists "where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other."); *Waverly City Sch. Dist. Bd. of Ed. v. Triad Architects, Inc.*, 10th Dist. No. 08AP-329, 2008-Ohio-6917, ¶ 35 (listing relationships which can give rise to implied indemnification, such as wholesaler/retailer). Stated simply, SFIS is only entitled to common-law indemnification by MSA if SFIS' liability to Plaintiffs arises solely from its vicarious liability for MSA's actions.

Here, however, Plaintiffs do not allege that SFIS is vicariously liable for MSA's actions; they allege that SFIS is liable for its own actions. This makes the instant case on all fours with 678559; 0753-0008

9

681069

*Waverly*, *supra*, where an engineering subcontractor, National Engineering, Ltd., asserted a third-party claim for common-law indemnification, just like SFIS here. But the Court granted summary judgment on that claim in favor of the third-party defendants, because no vicarious liability had been alleged against National, and indemnification could only arise where National's liability resulted from its vicarious liability for others' actions. Where National did not "allege any relationship between itself and any other party that would give rise to vicarious liability," the Court found "no authority for concluding that the tenuous relationships between the parties here are sufficient to create an implied contract of indemnity. Any liability that National may incur arises not as a result of any relationship to the alleged wrongdoers, but by virtue of National's contractual relationship" with the party suing it. *Id.* at ¶ 36. Here, the same analysis applies: SFIS, in the same position as National in *Waverly*, has not alleged any relationship or factual scenario that would make it vicariously liable for damages caused to Plaintiffs by MSA. Accordingly, because common-law indemnification cannot exist because SFIS is not being held vicariously liable for MSA's actions, this Court should grant summary judgment in MSA's favor as to those claims.

Third and finally, above and beyond the issues already discussed, MSA is entitled to summary judgment because undisputed evidence demonstrates that SFIS' liability, if it exists, arises from SFIS' own actions, at least in part. Under Ohio law, SFIS is not entitled to common-law indemnification if it is directly liable to Plaintiffs for any reason beyond its allegedly vicarious liability. *USX Corp. v. Penn. Central Corp.*, 137 Ohio App.3d 19, 28, 738 N.E.2d 13, 20 (8th Dist. 2000) (party seeking indemnification must have "incurred tort liability without personal fault"); *Whitney v. Horrigan*, 112 Ohio App.3d 511, 515, 679 N.E.2d 315, 317 (10th Dist. 1996) ("where two parties actively participate in the commission of a tort, they are joint tortfeasors and no right of indemnification exists between them."). Whether or not Plaintiffs are entitled to recover against SFIS – a question on which MSA takes no position – it is indisputable that SFIS' liability arises, at least in part, from its own conduct. As Plaintiffs have pointed out, SFIS made representations

678559; 0753-0008

10

681069

directly to Plaintiffs which form the basis for Plaintiffs' allegations, *see e.g.* Plaintiffs' Opposition to SFIS' Motion for Summary Judgment, ECF #120 at 2-7 (detailing Williams' communications with Plaintiffs). Accordingly, if SFIS is liable to Plaintiffs, its liability cannot arise solely from MSA's actions, in light of SFIS' independent and direct communication with Plaintiffs. Because the complete absence of direct liability to Plaintiffs is an essential element of common-law indemnification under Ohio law which SFIS cannot demonstrate in light of the evidence in the record, MSA is entitled to summary judgment in its favor on this claim.

### C. Common Law Contribution Cannot Apply

Finally, SFIS alleges that MSA is liable in contribution. Here, however, because MSA is not liable to Plaintiffs, it cannot be a joint tortfeasor with SFIS. This is evidenced not only by the Plaintiffs' voluntary dismissal of all claims against MSA, but also the well-settled law applicable to each claim in the Amended Complaint.

#### 1. Fraud

Under Ohio law, MSA can only be held liable for fraud if it made (1) a representation or, if a duty to disclose exists, concealment of a fact; (2) material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent to mislead another into relying on the representation; (5) justifiable reliance on the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Brown v. Whirlpool Corp.*, 996 F.Supp.2d 623, 644 (N.D.Ohio 2014) (Carr, J.). As Plaintiffs' undisputed testimony establishes, they did not receive or rely on any representations from MSA before Ullico's insolvency occurred. (Fleming Dep. at 97, Mitcham Dep. at 71-72.) Accordingly, MSA cannot be a joint tortfeasor with SFIS with regard to any claim of fraud.

### 2.  Negligence and/or Breach of Fiduciary Duty

Next, Plaintiffs allege that MSA negligently failed to advise them. (Amended Complaint, ECF #54, at ¶ 70.) However, Plaintiffs' claims for negligence and breach of fiduciary duty are barred by Ohio's economic-loss rule, which this Court has repeatedly enforced. *See, e.g., Trgo v. Chrysler Corp.*, 34 F.Supp.2d 581, 594 (N.D.Ohio 1998) (Gwin, J.) ("whether privity exists or not, commercial parties cannot recover for solely economic loss in tort under Ohio law."). This is especially true in the context of allegedly negligent insurance advice. *All Erection & Crane Rental Corp. v. Acordia NW, Inc.*, 162 Fed.Appx. 554, 2006 Fed.App. 0046N (6th Cir. 2006) (in dismissing negligence claims grounded in insurance, the "district court therefore properly cited and focused on the well-established rule that 'a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'"); *J.F. Meskill Ents., LLC v. Acuity*, 2006 WL 903207 (N.D.Ohio Apr. 7, 2006) (Gaughan, J.) (dismissing negligence claims for economic loss arising from advice regarding insurance coverage). Accordingly, because Plaintiffs' claims for negligence and breach of fiduciary duty arise from solely economic loss, MSA cannot be liable for contribution to SFIS as to those claims.

Moreover, even if Plaintiffs' tort claims are not barred by the economic loss rule, Ohio law does not recognize the duty alleged by Plaintiffs as to MSA. *See, e.g., Tornado Technologies, Inc. v. Quality Control Inspection, Inc.*, 2012-Ohio-3451, 977 N.E.2d 122 (8th Dist.), at ¶¶ 18-19 (duty owed by insurance agent is limited to reasonable diligence in procuring requested insurance). If an insurance agent, whose primary duty is to its customer, has no such duty, then certainly MSA, as an agent of the insurer Ullico, had no greater duty.

Similarly, Ohio does not recognize any fiduciary duty between Plaintiffs and their insurer or its agent, such as MSA. *See, e.g., Infocision Mgmt. Corp. v. Michael D. Sammy Ins. Agency, Inc.* (9th Dist.), 2014-Ohio-4653, ¶¶ 24-26 (agent's agreement to research potential coverage did

678559; 0753-0008

12

not give rise to fiduciary duty); *In re Hwy. Equip. Co.*, 64 F.3d 663 (6th Cir. 1995) (no breach of fiduciary duty in failing to disclose common ownership of affiliated entities). Under Ohio law, a fiduciary relationship that arises outside the well-recognized context of a professional relationship (such as attorneys, securities dealers, or real estate brokers) requires that "both parties understand that a special trust has been reposed." *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 75 Ohio St.3d 433, 442, 1996-Ohio-194, 662 N.E.2d 1074, 1081. Here, where neither Plaintiffs nor SFIS have presented evidence that MSA and Plaintiffs understood any such relationship of special trust to exist, no fiduciary duties existed.

And as discussed above, Plaintiffs have specifically testified that no representations by MSA influenced their decision to place and maintain their workers' compensation insurance coverage with Ullico. Accordingly, even if some negligence or fiduciary duty between MSA and Plaintiffs existed – which it did not – it cannot have been breached by MSA, or proximately caused any damages. Accordingly, MSA cannot be a joint tortfeasor with regard to these claims.

### 3. Breach of Contract

Plaintiffs' claims for breach of contract lack merit as to MSA, because MSA was the agent of its disclosed principal, Ullico. *Whitt Sturtevant, LLP v. NC Plaza LLC*, 2015-Ohio-3976, 43 N.E.3d 19 (10th Dist.), at ¶ 96 ("where an agent acts for a disclosed principal, in the name of such principal, and within the scope of authority, such agent is ordinarily not liable on the contracts the agent makes.") Here, there can be no dispute that MSA disclosed its principal, Ullico, when contracting with Plaintiffs for the payment of insurance premiums. The contract signed by Plaintiffs' President described Ullico as the carrier. (Ex. 5.) Accordingly, Plaintiffs' allegation that MSA breached its contract with MSA by "[c]ollecting and retaining amounts from [Plaintiffs] to which [they] were not entitled" cannot result in MSA's liability. (Amended Complant at ¶ 81b.) To recover any alleged overpayment of premium, Plaintiffs will have to depend solely on their claim against Ullico, currently pending in Delaware state court.

678559; 0753-0008

681069

Moreover, Plaintiffs' contract claims cannot be the basis for SFIS' contribution claim. In Ohio, "[c]ontribution is based on statute and can be used when two defendants contribute to a single indivisible injury." *Dawson v. Cleveland*, 8th Dist. No. 94614, 2011-Ohio-102, ¶ 18. But the statute at issue, R.C. 2307.25, applies, by its own terms, only when "one or more persons are jointly and severally liable <u>in tort</u> for the same injury…" (emphasis added). Contractual liability cannot be the basis for a contribution claim, which is available only for tort liability. *Waverly City*, 2008-Ohio-6917 at ¶¶ 28-29. Accordingly, SFIS cannot seek contribution, a remedy exclusive to tort liability, from MSA for Plaintiffs' claim of breach of contract.

### 4. Unjust Enrichment

Finally, Plaintiffs assert a claim for unjust enrichment. As this Court well knows, "unjust enrichment cannot exist where there is a valid and enforceable written contract." *Patterson v. Rite Aid Corp. Headquarters*, 752 F.Supp.2d 811, 818 (N.D.Ohio 2010) (Nugent, J.), citing *Kincaid v. Erie Ins. Co.*, 183 Ohio App.3d 748, 2009-Ohio-4372, 918 N.E.2d 1036 (8th Dist. 2009), ¶ 27, *rev'd on other grounds*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207 (2010). Here, MSA had a written contract with Plaintiffs governing the payment of premiums. (Ex. 5.) Accordingly, even assuming *arguendo* that SFIS could seek contribution from the quasi-contractual liability imposed by a claim for unjust enrichment, MSA cannot be a "joint tortfeasor" with regard to unjust enrichment, because it cannot be liable to Plaintiffs in quasi-contract where a written contract controls.

### IV.    Conclusion

Defendants Main Street America MGA, Inc. and Rick Walker are entitled to summary judgment in their favor on the cross-claims of SFIS, pursuant to Civ.R. 56(a). Plaintiffs' Amended Complaint against SFIS does not allege any claims covered by the indemnification provisions in the written contracts between SFIS and MSA; moreover, the undisputed evidence demonstrates that MSA was not involved in any of the representations or discussions upon which Plaintiffs'
678559; 0753-0008

14

681069

claims are based. MSA made no representations to Plaintiffs, made no agreements with Plaintiffs, and committed no errors in processing Plaintiffs' business as placed by SFIS. Accordingly, contractual indemnification is unavailable to SFIS, and MSA is entitled to summary judgment in its favor on SFIS' cross-claims for contractual indemnification.

SFIS' common-law claims also lack merit. Common-law indemnification is only available in the absence of a written contract; here, the indemnification duties between MSA and SFIS are set forth in writing. Moreover, neither Plaintiffs nor SFIS has alleged any basis under which SFIS can be held liable for MSA's conduct, which is an essential element of implied indemnification under Ohio law. Finally, because SFIS' liability, if it exists, arises at least in part from its own conduct, it cannot seek indemnification.

Finally, SFIS' contribution claims lack merit, because MSA cannot be liable in tort to Plaintiffs. MSA owed no tort duty of reasonable care to Plaintiffs, and Plaintiffs' tort claims are barred by Ohio's economic loss rule. Moreover, MSA cannot be a "joint tortfeasor" as to contractual or quasi-contractual claims asserted by Plaintiffs. Most importantly, Plaintiffs testified in deposition that they never relied on any statements, representations, or advice from MSA in making the decisions that now form the basis of their claims. Accordingly, because MSA cannot be a "joint tortfeasor" as to Plaintiffs, it is entitled to summary judgment as to SFIS' contribution claims.

Respectfully submitted,

/s/
JASON D. WINTER (#0076191)
GEORGE H. CARR (#0069372)
JANIK L.L.P.
9200 South Hills Blvd., Suite 300
Cleveland, OH  44147-3521
440-838-7600 – Main | 440-838-7601 – Fax
Jason.Winter@Janiklaw.com
George.Carr@Janiklaw.com
*Attorneys for Defendants, Main Street America MGA, Inc. and Rick Walker*

678559; 0753-0008

15

681069

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

Pursuant to Northern District of Ohio Local Rule 7.1(f), the undersigned certifies that this Motion For Summary Judgment complies with the page limit for standard track cases.

/s/ George H. Carr
JASON D. WINTER (#0076191)
GEORGE H. CARR (#0069372)]
JANIK L.L.P.
*Attorneys for Defendants, Main Street America MGA, Inc. and Rick Walker*

**CERTIFICATE OF COMPLIANCE WITH CASE SCHEDULING ORDER, ECF  #50**

Pursuant to this Court's Order of July 8, 2015, the undersigned certifies that it requested voluntary dismissal of the cross-claims asserted by Safe Fleet which are the subject of this motion by letter of April 11, 2016 (Ex. 1.) By letter of April 28, 2016, counsel for Safe Fleet declined to voluntarily dismiss the cross-claims. (Ex. 2.) Although the undersigned vigorously disputes the arguments presented in that letter, it appears to satisfy this Court's Order requiring "explicit reasons" for Safe Fleet's decision.

/s/ George H. Carr
JASON D. WINTER (#0076191)
GEORGE H. CARR (#0069372)]
JANIK L.L.P.
*Attorneys for Defendants, Main Street America MGA, Inc. and Rick Walker*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically this 9th day of May, 2016.  Notice of this filing will be sent to parties by operation of the Court's electronic filing systems.  Parties may access this filing through the Court's system.

/s/ George H. Carr
JASON D. WINTER (#0076191)
GEORGE H. CARR (#0069372)]
JANIK L.L.P.
*Attorneys for Defendants, Main Street America MGA, Inc. and Rick Walker*

678559; 0753-0008

16

681069