UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AIM LEASING COMPANY, et al., | ) | CASE NO. 4:14-CV-02161 |
| | ) | |
| Plaintiffs, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| vs. | ) | **DEFENDANT HARBOR AMERICA** |
| | ) | **SPECIALTY BROKERAGE, INC.'S** |
| RLI CORP., et al., | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **AS TO DEFENDANTS/THIRD-PARTY** |
| Defendants. | ) | **PLAINTIFFS SAFE FLEET INSURANCE** |
| | ) | **SERVICES, INC., AND DAVID** |
| | ) | **WILLIAMS' CROSS CLAIM** |

Now comes Defendant Harbor America Specialty Brokerage, LLC (hereinafter "HASB"), by and through counsel Mazanec, Raskin & Ryder Co., L.P.A., and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, move this Court for summary judgment as a matter of law as to all claims asserted by Defendants/Third-Party Plaintiffs Safe Fleet Insurance Services, Inc., and David Williams in their Cross Claim.  As will be explained in detail in the attached Memorandum in Support, there are no genuine issues of material fact remaining to be determined, and HASB is entitled to judgment in its favor as a matter of law.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Joseph F. Nicholas, Jr.*
JOSEPH F. NICHOLAS, JR.  (0038063)
MICHAEL P. BYRNE (0089603)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   jnicholas@mrrlaw.com
              mbyrne@mrrlaw.com
Counsel for Defendant Harbor America Specialty Brokerage, LLC

## <u>TABLE OF CONTENTS</u>

I.  Introduction of Parties and Claims…………………………………………………4

II.  Statement of Facts……………………………………………………………..6

    A.  AIM's Selection of the Ullico Workers' Compensation Program……………..6

    B.  HASB's Role in the Ullico Workers' Compensation Program………………...7

    C.  AIM Renews its Workers' Compensation Insurance with Ullico……………..7

    D.  AIM Decides to Remain with Ullico Following Ullico's Credit Downgrade…8

III.  Law and Argument…………………………………………………………….9

    A.  Standard of Review…………………………………………………………9

    B.  Safe Fleet and Williams' Claim for Contractual Indemnity as to Defendant HASB Fails as a Matter of Law…………………………………………….. 10

    C.  Safe Fleet and Williams' Claims for Common-Law Indemnification and Contribution Fail as a Matter of Law as to HASB as They Were Owed No Legal Duty by HASB…………………………………………………… 12

    D.  Safe Fleet and Williams' Claim for Common-Law Indemnification Fails as to HASB as Safe Fleet and Williams Cannot be Held Liable to Plaintiffs for the Actions Solely of HASB…………………………………………………… 16

    E.  Safe Fleet and Williams' Claim for Contribution Fails as a Matter of Law as to HASB as HASB is Not Liable in Tort to AIM………………………………18

IV.  Conclusion……………………………………………………………………… 19

2

## **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)……………………………………………10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………………………10

*Continental Casualty Company v. Auto Plus Insurance Agency, LLC*, 676 F.Supp.2d 657 (N.D. Ohio 2009)………………………………………………………………………………...…13

*Daniel James Ins. Agency, Inc v. Floyd West of Louisiana, Inc.*, 6th Cir. No. 96-4361, 1998 WL 199721 (April 16, 1998)………………………………………………………………..........13, 14

*Dawson v. Cleveland,* 8th Dist. No. 94614, 2011-Ohio-102…………………………………....18

*Federal Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 543 N.E.2d 769 (1989)…13

*First Catholic Slovak Union v. Buckeye Union Ins. Co.*, 27 Ohio App.3d 169, 499 N.E.2d 1303 (8th Dist. 1986)……………………………………………………………………………………13

*Hurst v. Enterprise Title Agency, Inc*., 157 Ohio App.3d 133, 809 N.E.2d 689, 2004-Ohio-2307…………………………………………………………………………………13

*Huston v. Konieczny*, 52 Ohio St.3d 214, 556 N.E.2d 505 (1990)……………………………….13

*Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 472 N.E.2d 707 (1984)……………..13

*Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 653 N.E.2d 235 (1995)………..17

*Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 623 N.E.2d 30 (1993)………………17

*Slovak v. Adams*, 141 Ohio App.3d 838, 753 N.E.2d 910 (6th Dist. 2001)…………………………13

*Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St.2d 11, 321 N.E.2d 787 (1975)………………..17

**Statutes**

O.R.C. § 2307.25……………………………………………………………………………………18

**Other Authorities**

Federal Rule of Civil Procedure 56………………………………………………………………….9

## I.      INTRODUCTION OF PARTIES AND CLAIMS

Plaintiffs AIM Leasing Company, AIM Leasing Drivers Company, and AIM Integrated Logistics (hereinafter "AIM") are interrelated entities operating a full service truck leasing and transportation logistics business.  AIM purchased workers' compensation insurance coverage from Ullico Casualty Company (hereinafter, "Ullico") for the years 2009-2013.  The various defendants played certain roles in the facilitation of the Ullico workers' compensation program and servicing AIM's account.  AIM's purchase of the Ullico policy was allegedly upon the advice and recommendation of the various defendants, as was the decision to maintain AIM's coverage with Ullico after it was announced that Ullico's credit had been downgraded.

Third-Party Defendant RJL Insurance Services ("RJL") is a consulting company that was hired by AIM to provide advice and assistance with the procurement of insurance coverage, including workers' compensation coverage.  RJL specializes in insurance and risk management services for the commercial transportation industry.  Third-Party Defendant Richard Liebfried ("Leibfried") is the president of RJL, and was personally involved in servicing the AIM account. RJL made contact with Co-Defendants Safe Fleet Insurance Services, Inc. ("Safe Fleet"), and David Williams ("Williams") on behalf of AIM for the purposes of obtaining quotes for AIM's insurance needs.

Co-defendant/Third-Party Plaintiff Safe Fleet is a retail insurance agency servicing clients in the commercial transportation business.  It operated as the retail agent in the transaction by which AIM procured workers' compensation insurance from Ullico.  Co-Defendant David Williams was a Vice President with Safe Fleet, and was personally involved in servicing the AIM account, and advising AIM in regard to its insurance needs.  Safe Fleet and RLI entered into a written contract with non-party Harbor America Holdings, Inc. ("HAHI") and any and all of

HAHI's related entities, which include HASB and Main Street America MGA, to sell Professional Employer Organization services and products.  It is upon this contract that Safe Fleet and Williams base their claim for contractual indemnification against HASB.

Co-defendant Main Street America MGA ("MSA"), managed by Co-Defendant Rick Walker ("Walker"), is a wholesale insurance broker that had acted as a broker for Ullico prior to AIM's procurement of workers' compensation coverage from Ullico.  In 2011, MSA entered into an agreement with Ullico to be Ullico's managing general agent, and it entered into a non-exclusive agency agreement with Safe Fleet.  Pursuant to the agreement with Ullico, MSA would issue quotes to Safe Fleet for AIM's workers' compensation coverage each year, and it would assure that premiums were collected and distributed according to the agreement's terms.  The agreement with Safe Fleet permitted Safe Fleet to offer the Ullico coverage to its clients and be compensated by way of commissions.

HASB is also a wholesale insurance broker, interrelated to MSA through common ownership.  HASB, like MSA, was managed by Walker.  HASB's role in the Ullico workers' compensation insurance program was <u>minor</u> and <u>limited</u>.  HASB marketed the program to retail agents, such as Safe Fleet, and acted merely as the conduit through which the premium payments were collected and distributed.  Specifically, as HASB had electronic fund transfer capability, it would receive the premium payments from AIM, and then, at the direction of MSA, distribute them to Ullico, MSA, and Safe Fleet, pursuant to the terms of MSA's agreements with Ullico and Safe Fleet.

In its Amended Complaint, AIM asserts a number of claims against the various defendants arising from the suspension of its workers' compensation coverage when Ullico was placed into receivership.  Specifically, AIM alleges that its workers' compensation policy with now defunct

5

Ullico was obtained and renewed upon the advice and recommendation of the various defendants, and moreover, that the various defendants further advised AIM to remain with Ullico despite the 2012 downgrade of Ullico's credit.  This downgrade lead to Ullico becoming insolvent and being placed into receivership, whereupon AIM's coverage was suspended and AIM became directly liable for several significant employee injury claims.  Safe Fleet and Williams' Cross Claim against HASB seeks contractual indemnification, common-law indemnification, and contribution for any damages for which they may become liable to AIM.

## II.    STATEMENT OF FACTS

### A.    AIM's Selection of the Ullico Workers' Compensation Program

Prior to August 1, 2009, AIM obtained workers' compensation coverage through AIG.  This coverage was placed by their prior insurance broker, Cottingham & Butler. (Deposition Transcript of Mark Mitcham, ECF 113, 18).  AIM hired Cottingham & Butler to directly represent AIM's interests and approach various carriers to procure workers' compensation insurance. (Mitcham, 19).  However, in 2009, AIM hired Richard Leibfried and his company, RJL, to be its insurance consultant. (Deposition Transcript of Tom Fleming, ECF 112, 32).  With this hire, the way by which AIM obtained its workers' compensation coverage changed.  AIM and RJL now chose specific agents, and directed those agents to specific carriers for quotes on coverage. (Mitcham, 20-21).  RJL instructed Safe Fleet to obtain a quote from Ullico for AIM's workers' compensation insurance needs. (Deposition Transcript of David Williams, ECF 111, 27).

AIM ultimately chose the bid provided by Safe Fleet from Ullico, and the policy went into effect on August 1, 2009. (Mitcham, 25).  AIM's owner, Tom Fleming testified that the Ullico quote was chosen because of its price, and the fact that the price was guaranteed. (Fleming, 42).  At the time Ullico was selected, Mr. Fleming was aware that Ullico had an A.M. Best rating of

"B+," but that did not concern him at the time because it was not a bad rating, and Ullico was an admitted carrier backed by the state guarantee funds. (Fleming, 42).

### B.     HASB's Role in the Ullico Workers' Compensation Program

MSA had acted as a broker for Ullico prior to the start of business with AIM in 2009. (Deposition Transcript of Rick Walker, 10). Then, in 2011, Ullico, and American Emerald Holdings and Main Street d/b/a Harbor America Specialty Brokerage entered into a Program Administrator Agreement with Ullico. (Walker, 10-11). Pursuant to this agreement, MSA continued to be utilized as a broker for Ullico, but the relationship expanded to where MSA was also functioning as a managing general agent, which included the duty to collect and distribute premiums and commissions. (Walker, 11-12; Walker Ex. 2). MSA was also responsible for gathering customer information from retail brokers such as Safe Fleet, and forwarding it to Ullico for underwriting. (Walker, 26). Having electronic fund transfer capability, MSA's sister company, HASB, was utilized for the sole purpose of receiving and distributing premium payments. (Walker, 10-11; 25-26). Specifically, premium payments were collected by HASB, and then sent to MSA to be distributed based upon the terms of the agreement with Ullico. (Walker, 11). All of the deposed witnesses, including Williams, and AIM's own executives have testified that HASB made no representations that in any way induced AIM to procure, renew, or maintain its workers' compensation insurance with Ullico at any time. (Williams, 219; Fleming, 100-102; Mitcham 77-78).

### C.     AIM Renews its Workers' Compensation Insurance with Ullico

At the conclusion of the 2009-2010 policy period, Safe Fleet provided a quote from Ullico for an 18 month policy from August 1, 2010, through February 1, 2012. (Fleming, 84-86). For the same reasons it had previously chosen Ullico, AIM once again proceeded with the Ullico quote

provided by Safe Fleet. (*Id.*). Following this 18 month policy period, Ullico remained an A.M. Best B+ rated carrier, and Mr. Fleming stated he had no reservations about continuing with Ullico for an additional 12 months. (Williams, 62; Fleming, 86). As such, AIM once again chose the Ullico quote, and coverage was procured for AIM through February 1, 2013. (Fleming, 86).

### D.   AIM Decides to Remain with Ullico Following Ullico's Credit Downgrade

On February 7, 2012, Ullico was downgraded by A.M. Best to a "B" rating. (Williams, 148). Williams contacted AIM's Director of Insurance and Compliance, Mark Mitcham, to advise him of the downgrade, and to present him with three options: 1) AIM could cancel the Ullico coverage without financial penalty; 2) AIM could simply do nothing; or 3) AIM could arrange for a conference call with Ullico to discuss the situation, and identify the cause of the downgrade. (Williams, 62-63). AIM chose to proceed with the third option, and a conference call between representatives of AIM, RJL, Safe Fleet, Ullico, MSA, and HASB took place on March 7, 2012. (Fleming, 58).

During the call, Ullico gave what Mr. Fleming described as a full and honest explanation about the downgrade. (Fleming, 62). Fleming further testified that he received assurances from Ullico "that things were going to be okay and that, you know, were were better to stay with where we were." (*Id.*). Mr. Fleming did not believe that any of the participants in the conference call made any misrepresentations during the call, as all of the statements were made to the best of their knowledge. (Fleming, 63). Furthermore, Mr. Fleming was not as concerned as he felt that AIM had backup in the form of the state guaranty funds. (Fleming, 62). At the conclusion of the conference call, Fleming announced that AIM would continue to receive its workers' compensation coverage through Ullico. (Fleming, 62; Williams 231-232). Notably, Mr. Fleming also testified that he <u>never</u> relied upon any statement from any representative from HASB in regard to

maintaining AIM's workers' compensation coverage with Ullico following the A.M. Best downgrade. (Fleming, 102).

Thereafter, A.M. Best downgraded Ullico again, from a B to a B- rating. (Williams, 146-148). Finally, on March 11, 2013, Ullico went into rehabilitation, and then into liquidation on May 30, 2013. (Williams, 146; Deposition Transcript of Richard Leibfried, 93). After Ullico's liquidation, AIM submitted its unsatisfied workers' compensation claims to the guaranty funds in various states. (Fleming, 50-51, 64-65). A few of these claims, including one particularly large claim, were not paid by those guaranty funds as a result of limitations on those funds by the various states. *Id.* AIM alleges that it relied upon representations made to it by the defendants to the effect that the state guaranty funds would completely cover these claims, and is therefore seeking reimbursement for the amount it has become responsible for as a result of these outstanding claims. Safe Fleet initiated a Cross-Claim against HASB seeking indemnification and contribution for any liability that it may incur to AIM as a result of the above described transaction.

## III.    LAW AND ARGUMENT

### A.    Standard of Review

Summary judgment is appropriate if the evidence in the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. When moving for summary judgment, an adverse party may not rest upon mere allegations or a denial of the adverse party's pleading. Fed. R. Civ. Pro. 56(e). Instead the non-moving party must set forth specific facts showing there is a genuine issue for trial. *Id.* The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden

at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In these situations there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id.*

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material only if its resolution will affect the outcome of the lawsuit.  *Id.* Where opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.  *Id.*

In this case, there is no dispute as to any of the material facts, and HASB is entitled to judgment as a matter of law.  Therefore, for the reasons stated below, HASB respectfully requests that this Court grant its Motion for Summary Judgment.

## B. Safe Fleet and Williams' Claim for Contractual Indemnity as to Defendant HASB Fails as a Matter of Law

Safe Fleet and Williams base their contractual indemnification claim on a "Liability" clause contained within the "Independent Representative Agreement" that they entered into with HAHI and HAHI's related entities, which include HASB, on May 13, 2009.  This clause reads, "The Company (HAHI and its related entities) agrees to indemnify and hold Representative (Safe Fleet) its subsidiaries, officers, employees, Sub-Agents and agents harmless from and against any and all expenses, damages, liability, claims, encumbrances, deficiencies, costs or expenses resulting from any breach of **any warranties, or representations or agreements made between Customer (AIM) and the Company**." (See May 13, 2009 Independent Representative Agreement attached hereto as Exhibit A), emphasis added.

10

Safe Fleet and Williams cannot be seeking indemnification on the basis of a breach of an agreement by and between AIM and HASB, as there was never any agreement made between AIM and HASB; oral, written, or otherwise.  Additionally, Safe Fleet and Williams cannot be seeking indemnification for a breach of warranty, because AIM has not asserted any such claim.  Therefore, Safe Fleet and Williams' claim for contractual indemnification must be based upon an alleged misrepresentation.  Specifically, AIM has asserted that that it was improperly induced by the various defendants to purchase or maintain its workers' compensation insurance with Ullico.  However, this claim fails because, as all of the deposed witnesses, including AIM's own executives have established, HASB made no representations that in any way induced AIM to procure, renew, or maintain its workers' compensation insurance with Ullico.

Mr. Fleming, AIM's Owner and CEO testified as follows:

"Q: Did you have any interaction with anybody, a representative or employee from Harbor America Specialty Brokerage in regard to the procurement of Aim's workers' compensation coverage?  A: **No.** Q: Are you aware of anybody at Aim that had any conversation or communication with anybody at Harbor America about the procurement of your workers' compensation coverage? A: **Not that I'm aware of.**  Q: Was there any statement or any statement ever made by anyone from Harbor America Specialty Brokerage to you that you relied upon in making your decision when procuring your company's workers' compensation coverage? A: **No.**"  (Fleming, 100-101) emphasis added.

Mr. Fleming's testimony was equally conclusive when he was questioned regarding whether any representations were made by HASB when the decision was made to maintain its workers' compensation coverage with Ullico after the credit downgrade.  "Q: Did you ever rely on any statement made to you by any employee [or] representative from Harbor with regard to maintaining your workers' compensation coverage with Ullico following the downgrade from A.M. Best? A: **No**." (Fleming, 102) emphasis added.

AIM's Director of Insurance and Compliance, Mark Mitcham, testified similarly in regard to AIM's purchase of the Ullico workers' compensation insurance.  "Q: So your first interaction with Harbor America Specialty Brokerage would have been after the decision had already been made to make the workers' compensation insurance purchase from Ullico? A: Yes.  Q: So you wouldn't have relied upon anybody from Harbor America Specialty Brokerage in making that decision? A: **No.**" (Mitcham, 77-78) emphasis added.  Mr. Mitcham's testimony regarding the renewal of the Ullico coverage, and continuing with Ullico following its credit downgrade further demonstrate a complete lack of involvement on the part of HASB in AIM's decision making.

> "Q: When you were renewing your coverage with Ullico, were any statements made to you by any member of Harbor America Specialty Brokerage that you relied upon when moving forward with those renewals? A: **I don't recall.** Q: At the time of the downgrade of Ullico by A.M. Best, was any statement made to you by any representative of Harbor America Specialty Brokerage that you relied upon in making the decision? A: **I don't recall if they made any such statement.**" (Mitcham, 78) emphasis added.

Likewise, Williams himself testified that **"[n]o, no, no, professional advice and recommendations, no, we would not have relied on or relayed, you know anything from – nor would we have asked that of anybody at Harbor America or Main Street."** (Williams, 219) emphasis added.

Given the language of the Independent Representative Agreement, and as there were no representations made by HASB on which AIM would have relied to its detriment, there is certainly no basis upon which Safe Fleet and Williams can support their claim for contractual indemnification.

### C. Safe Fleet and Williams' Claims for Common-Law Indemnification and Contribution Fail as to HASB as They Were Owed No Legal Duty by HASB

HASB is not liable to Safe Fleet and Williams' for common law indemnification or contribution, as HASB did not owe a legal duty to Safe Fleet, Williams or AIM.  It is fundamental

that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).  Under the law of negligence, a defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in plaintiff's position. *Huston v. Konieczny*, 52 Ohio St.3d 214, 217, 556 N.E.2d 505 (1990).  In Ohio, absent a special relationship, there is no duty to control the conduct of another to prevent his or her acts or omission from causing harm. *Federal Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989).  "Thus, liability in negligence will not lie in the absence of a special duty owed by a particular defendant." *Id.*

"A breach-of-fiduciary-duty claim essentially is a negligence claim involving a higher standard of care.  Thus, **the party asserting such a breach must establish the existence of a fiduciary duty**, a breach of that duty, and any injury proximately resulting therefrom."  *Hurst v. Enterprise Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, ¶39 (emphasis added.) Generally, under Ohio law, the relationship between an insured and an agent is an ordinary business relationship, not a fiduciary one. *Slovak v. Adams*, 141 Ohio App.3d 838, 846, 753 N.E.2d 910 (6th Dist. 2001).  As such, insurance agents owe only a general duty to their customers "to exercise good faith and reasonable diligence in obtaining insurance which its customer requests." *Continental Casualty Company v. Auto Plus Insurance Agency, LLC*, 676 F.Supp.2d 657, 664, (N.D. Ohio 2009), citing *First Catholic Slovak Union v. Buckeye Union Ins. Co.*, 27 Ohio App.3d 169, 170, 499 N.E.2d 1303 (8th Dist. 1986).  An agent has no specific duty to advise a client unless "**the agency knows that the customer is relying upon its expertise**." *Id.*

The Sixth Circuit has addressed the question of whether a wholesale insurance broker owes a duty to a retail insurance agent, and the retail insurance agent's customer.  In *Daniel James Ins.*

*Agency, Inc v. Floyd West of Louisiana, Inc.*, 6th Cir. No. 96-4361, 1998 WL 199721 (April 16, 1998), the Sixth Circuit held that Floyd West, a wholesale insurance broker owed no duty to either Daniel James, a retail insurance agency, or Daniel James' client, the insured Findlay Industries, Inc.  Floyd West had placed both excess commercial property coverage and difference in conditions insurance for Daniel James, on behalf of its client, Findlay. *Daniel James*, *1.  Findlay requested Daniel James to obtain extra expense coverage on both its commercial property and difference in conditions policies. *Id*.  However, all that Daniel James submitted to Floyd West was a change request for the extra expense coverage on the commercial property coverage. *Id*.  Floyd West simply placed the coverage Daniel James had ordered, and no one at Daniel James reviewed the file and noticed any inconsistencies. *Id*.

Thereafter, one of Findlay's plants was damaged by a flood, and it was discovered that the difference in conditions policy did not contain a requested endorsement for extra expense coverage. *Id*., *2.  Daniel James' errors and omissions insurer, Utica National, paid Findlay for the damages. *Id*.  Thereafter, Daniel James and Utica National brought action against Floyd West for contribution and indemnity, claiming that Floyd West failed to alert Daniel James about the gap in coverage. *Id*.  The court denied Floyd West's motion for summary judgment, and at trial, the jury found for the plaintiffs. *Id*.  However, upon appeal, the Sixth Circuit overturned the trial court's decision, and held that Floyd West did not owe a duty to either Daniel James or Findlay and as such it could not be joint tortfeasor and was not liable for any contribution. *Id*., *2-3.

The Sixth Circuit explained that Daniel James and Utica National failed to demonstrate a special relationship between themselves and Floyd West, as Floyd West merely fulfilled exactly what Daniel James, an experienced and sophisticated retail commercial insurance agency, had requested. *Daniel James*, *3.  While Daniel James and Floyd West had a course of dealing in

14

handling the Findlay account, Floyd West had no direct contact with Findlay, and there is no evidence that Daniel James relied on Floyd West to advise it on placing its business. *Id*.  As such, the court determined that "it was not reasonably foreseeable that the client of an experienced, sophisticated, and professional retail insurance agent, such as Daniel James, would be under insured if a wholesale insurance broker, such as Floyd West, did not review and compare the client's other policies with the retail agent's proposed change request for a gap in coverage." *Id*.

The circumstances of the present matter parallel the circumstances of the *Daniel James* matter, and as such, it is appropriate to apply the reasoning in that decision to appropriately conclude that Safe Fleet and Williams' claims for common law indemnification and contribution are without merit.  Here, HASB and its sister company, MSA, acted as wholesale insurance brokers in the business relationship between AIM, Safe Fleet and Williams, and Ullico. (Walker, 10).  In point of fact, HASB was utilized solely for the purpose of receiving and distributing premium payments. (Walker, 10-11; 25-26).  When Mr. Williams worked for Safe Fleet, he did so as a retail insurance agent, with AIM as his customer. (Williams, 18).  AIM authorized Williams to approach Ullico regarding its workers' compensation insurance coverage, and all of the quotes for this coverage came from <u>MSA</u>. (Williams, 41, 45).

It is certain that neither AIM, nor its experienced, sophisticated, and professional retail insurance agents, Safe Fleet and Williams, ever relied on HASB to advise them.  To reiterate, Mr. Williams testified **"[n]o, no, no, professional advice and recommendations, no, we would not have relied on or relayed, you know anything from – nor would we have asked that of anybody at Harbor America or Main Street."** (Williams, 219) emphasis added.  Likewise, Mr. Fleming testified as follows: "Q: Did you ever rely on any statement made to you by any employee [or] representative from Harbor with regard to maintaining your workers' compensation coverage

with Ullico following the downgrade from A.M. Best? A: **No**." (Fleming, 102) emphasis added. Moreover, Mr. Fleming never had any understanding of HASB's involvement in, or HASB's relationship to the transaction, or the other parties until after this litigation began. (Fleming, 82). Further, Fleming had never even met HASB manager, Rick Walker. *Id*.  Given these facts, it is clear that there was no special relationship between AIM, or Safe Fleet and Williams, and HASB that would impose any duty upon HASB relative to the selection of, and procurement of workers' compensation coverage.

These facts also demonstrate that the injury at issue was not foreseeable so as to impose a duty on HASB.  AIM had Safe Fleet and Williams, and RJL and Leibfried, at its service at all times during the course of events at issue in this matter.  As AIM was being serviced by these two sets of experienced, sophisticated, and professional retail insurance agents, certainly it was not reasonably foreseeable to HASB that AIM would be unaware of the limitations on state guaranty funds, and therefore exposed to liability in the event of Ullico's liquidation.  These circumstances do not present an unreasonable risk of harm, as logic would state that AIM's agents would have advised AIM of the limits on state guaranty funds.

Given the lack of a special relationship between HASB and AIM, or Safe Fleet and Williams, and how remote the probability of an injury was in this scenario, a duty cannot be imposed upon HASB.  Therefore, Safe Fleet and Williams' claims for common-law indemnity and contribution must fail, and HASB is entitled to judgment as a matter of law.

> **D. Safe Fleet and Williams' Claim for Common-Law Indemnification Fails as to HASB as Safe Fleet and Williams Cannot be Held Liable to Plaintiffs for the Actions Solely of HASB**

"The rule of indemnity provides that 'where a person is **chargeable with another's wrongful act** and pays damages to the injured party as a result thereof, he has a right of indemnity

**from the person committing the wrongful act**, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.'" *Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 16, 623 N.E.2d 30, (1993) citing *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St.2d 11, 14, 321 N.E.2d 787 (1975), emphasis added. "Implied contracts of indemnity are reserved for those 'situations involving related tortfeasors, **where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other.**'" *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 394, 653 N.E.2d 235 (1995) citing *Reynolds*, 68 Ohio St.3d 14, 16, emphasis added.  "Indemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." *Id.*

Here, Safe Fleet and Williams, and HASB are alleged to be joint tortfeasors.  Plaintiffs' Amended Complaint alleges in Count I that "…**defendants** made certain misrepresentations, promises, and guarantees…," and in Count II that "…**defendants** owed AIM certain responsibilities, duties and obligations…," and in Count III that "**Defendants** breached their fiduciary duties…." (Amended Complaint, ¶ 63, 69, 74).  Clearly, the assertion is that Safe Fleet and Williams are liable for their own actions, separate and apart from any action of HASB.  As such, Safe Fleet and Williams have no basis for their claim for common-law indemnification.

Moreover, there is no scenario in which Safe Fleet or Williams could be held liable to Plaintiffs for the actions solely of HASB.  In its Amended Complaint, AIM claims that it was improperly induced to purchase, and maintain workers' compensation insurance with Ullico. HASB did not make any representations to AIM, nor did it owe a duty to AIM.  As detailed above, both Williams, and AIM's owner, Fleming, have testified that HASB did not make any representations that were relied upon. (Williams, 219; Fleming 102).  In addition, HASB had only

17

an ordinary business relationship with both AIM, and Safe Fleet and Williams, and the injury sustained by AIM was not foreseeable as to HASB. In fact, AIM has now moved to dismiss its claims against HASB.

Therefore, as HASB is not liable to AIM, and in turn, Safe Fleet and Williams cannot be liable to AIM for any action of HASB, Safe Fleet and Williams' claim for common-law indemnification fails as a matter of law.

### E.    Safe Fleet and Williams' Claim for Contribution Fails as a Matter of Law as to HASB as HASB is Not Liable in Tort to AIM

The cause of action for "[c]ontribution is based on statute and can be used when **two defendants contribute to** a single indivisible injury." *Dawson v. Cleveland*, 8th Dist. No. 94614, 2011-Ohio-102, ¶ 18, emphasis added. R.C. 2307.25 is the statute upon which the cause of action of contribution is founded. The statute reads in pertinent part, "…if one or more persons are jointly and severally **liable in tort** for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution…." R.C. 2307.25(A) emphasis added.

Again, HASB owed no duty to AIM. HASB had only an ordinary business relationship with AIM, Safe Fleet and Williams, and the injury sustained by AIM was not foreseeable as to HASB. Nor did HASB make any representations to AIM. Williams, and AIM's executives have testified that HASB did not make any representations that were relied upon to their detriment. (Williams, 219; Fleming 102; Mitcham, 78). Therefore, HASB cannot be liable in tort to AIM, as is further demonstrated by the fact that AIM has moved to dismiss its claims against HASB. As such, Safe Fleet and Williams' claim for contribution must fail, and HASB is entitled to summary judgment as a matter of law.

18

## IV.    **CONCLUSION**

Plaintiff AIM brought this cause of action against the various defendants asserting that it was improperly induced to purchase, and maintain workers' compensation insurance with now defunct carrier Ullico.  Safe Fleet and Williams were sophisticated, experienced, and professional retail insurance agents hired by AIM to service AIM's workers' compensation insurance needs.  To limit the exposure of Safe Fleet and Williams' liability to AIM, they asserted claims for contractual and common-law indemnification, and contribution as to HASB.  HASB is a wholesale insurance broker that played a minor role in the Ullico workers' compensation insurance program; acting merely as a conduit for the premium payments.  HASB has no liability to AIM because it did not owe AIM a duty, nor did it make any representations relied upon by AIM.  Realizing this fact, AIM has moved to dismiss its claims against HASB.  Safe Fleet and Williams, unfortunately, have refused to do so.  However, for the reasons discussed above, Safe Fleet and Williams' claims for contractual and common-law indemnification, and contribution as to HASB fail, and HASB is therefore entitled to judgment as a matter of law.

Defendant Harbor America Specialty Brokerage respectfully requests that this Court grant its Motion for Summary Judgment as to the Cross Claim of Co-Defendants/Third-Party Plaintiffs Safe Fleet Insurance Services, Inc., and David Williams in its entirety and issue an Order dismissing this action against it.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Joseph F. Nicholas, Jr.*
JOSEPH F. NICHOLAS, JR.  (0038063)
MICHAEL P. BYRNE  (0089603)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:    jnicholas@mrrlaw.com
               mbyrne@mrrlaw.com

Counsel for Defendant Harbor America Specialty
Brokerage, LLC

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Northern District of Ohio Local Rule 7.1(f), I hereby certify that Defendant

Harbor America Specialty Brokerage, LLC's attached Motion for Summary Judgment and

Memorandum in Support comply with the page limit for standard track cases.

*s/Joseph F. Nicholas, Jr.*
JOSEPH F. NICHOLAS, JR.  (0038063)
MICHAEL P. BYRNE  (0089603)

Counsel for Defendant Harbor America Specialty
Brokerage, LLC

20

## CERTIFICATE OF COMPLIANCE WITH CASE MANAGEMENT PLAN

Prior to the filing of the instant Motion, in accordance with the Case Management Plan, the undersigned counsel requested the dismissal of all claims set forth against Harbor America Specialty Brokerage, LLC via electronic mail sent on April 11, 2016.  Counsel for Safe Fleet Insurance Services, Inc. and David Williams denied that request on April 28, 2016.  Counsel for Defendant Harbor America Specialty Brokerage, LLC renewed his request for the dismissal of all claims set forth against Harbor America Specialty Brokerage, LLC via electronic mail sent on May 5, 2016.  Again, this request was denied.

*s/Joseph F. Nicholas, Jr.*
JOSEPH F. NICHOLAS, JR.  (0038063)
MICHAEL P. BYRNE  (0089603)

Counsel for Defendant Harbor America Specialty Brokerage, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2016, a copy of the foregoing Defendant Harbor America Specialty Brokerage, Inc.'s Motion for Summary Judgment as to Defendants/Third-Party Plaintiffs RLI Corp., Safe Fleet, and David Williams' Crossclaim was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Joseph F. Nicholas, Jr.*
JOSEPH F. NICHOLAS, JR.  (0038063)
MICHAEL P. BYRNE  (0089603)
Counsel for Defendant Harbor America Specialty Brokerage, LLC

MARK-140328/HASB MSJ as to 3rd Pty Comp